IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MTH ENTERPRISES, LLC and MTH UNDERLAYMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA and THE UNITED STATES INTERNAL REVENUE SERVICE,<br><br>Defendants. | Case No. 24-cv-9729 |

## COMPLAINT

Plaintiffs, MTH Enterprises, LLC ("Enterprises") and MTH Underlayment, LLC ("Underlayment") [collectively, "Plaintiffs"], bring this lawsuit seeking a federal tax refund in the amount of $1,076,094.55 on behalf of Enterprises and $254,562.19 on behalf of Underlayment, plus interest for their Employee Retention Credit for quarters two and three of 2021.

Plaintiffs are entitled to the refunds under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L No. 116-136 § 2301, 134 Stat. 281 (2020) ("CARES Act") and section 3134 of the Internal Revenue Code (I.R.C.) because Plaintiffs qualifiy for the statutory test for a decline in gross receipts in quarters two and three of 2021. CARES Act § 2301(c)(2); I.R.C. § 3134(c)(2).

1

## NATURE OF THE CASE

1. In March 2020, the federal government enacted the CARES Act to aid businesses and individuals in response to the unprecedented public health crisis caused by the COVID-19 pandemic. The CARES Act was passed with large bipartisan support in Congress and was signed into law.

2. The CARES Act created the Employee Retention Credit ("ERC") for employers who continued to pay qualified wages to their employees during the height of the pandemic in 2020 and 2021.[1]

3. The statute created a tax credit against applicable employment taxes for each calendar quarter in which a business was eligible. *See* I.R.C. § 3134(a).

4. According to the United States Department of the Treasury, the department to which the Internal Revenue Service ("IRS") belongs, the CARES Act and the Coronavirus Response and Consolidated Appropriations Act of 2021 "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2]

---

[1] *See* the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), as amended by § 206 and § 207of the Taxpayer Certainty and Disaster Tax Relief Act ("Relief Act"), enacted as Division EE of the Consolidated Appropriations Act of 2021Pub.L. No. 116-260, 134 Stat. 3038 (2020) ("Consolidated Appropriations Act"), and American Rescue Plan Act of 2021,Pub.L. No. 117-2, 135 Stat. 8 (2021) ("American Rescue Plan Act") (providing extensions through January 1, 2022).

[2] U.S. Dep't of the Treasury, *About the CARES Act and the Consol Appropriations Act*, https://home.treasury.gov/policy-issues/coronavirus/about-the-caresact#:~:text=U.S.%20Department%20of%20the%20Treasury,-Search&text=The%20Coronavirus%20Aid%2C%20Relief%2C%20and,%2C%20small%20businesses%2C%20and%20industries.

5. Plaintiffs, Enterprises and Underlayment, qualified for, and applied for, a refund under the ERC program with the IRS.

6. After a lengthy delay, the IRS has failed to process each Plaintiff's claim for an ERC refund.

7. On September 14, 2023, the IRS issued a moratorium on processing ERC claims, effectively disallowing timely submitted ERC claims without review.[3]

8. The IRS has delayed processing ERC claims to such an extent that it has effectively suspended the program, even taking the position that its delays in processing the business tax credit will be a "cost-savings to the government."

9. Plaintiffs thus bring this lawsuit to obtain the credits they are entitled to receive under the CARES Act.

## JURISDICTION & VENUE

10. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1346, and under 26 U.S.C. (I.R.C.) § 7422.

11. Venue is proper under 28 U.S.C. § 1391(e)(1) and § 1402 because Plaintiffs maintain their principal place of business, Hillside, Illinois, in this district, and a substantial part of the events giving rise to this action occurred in this district.

---

[3] IR-2023-169 (Sept. 14, 2023).

## THE PARTIES

### A. Plaintiffs

12. Plaintiffs, Illinois limited liability companies, are located in Hillside, Illinois. Each is part of MTH Industries, which is the combination of four historically significant companies tracing its roots back to the 19th century. Enterprises and Underlayment continued their mission throughout 2020 and 2021 to provide high-quality masonry, glass and glazing, structural steel, and decorative flooring and underlayment.

### B. Defendants

13. The United States of America and the United States Internal Revenue Service (the "IRS") are the Defendants. The IRS is a bureau within the Executive Branch of the United States government organized within the Department of Treasury tasked with assessing and collecting internal revenue in the United States.

## BACKGROUND

### A. The CARES Act as a COVID-19 pandemic response

14. In the beginning of 2020, COVID-19 swept through the United States. The federal, state, and local governments issued orders to stem the spread of the disease. Those orders had an expected side effect: they exacerbated the already substantial disruptions to the economy from the pandemic.

15. In March 2020, the CARES Act was enacted to mitigate the economic fallout from widespread business impairments and job losses.

16. The ERC program was a significant part of the CARES Act. The ERC program created a tax credit for employers who continued to pay qualified wages, including some health plan expenses, to their employees.[4]

17. By helping businesses maintain their employees, the ERC program intended to create significant benefits for the country, including lowering enrollments in public assistance programs—like Unemployment Insurance and Medicaid—by people who might lose their jobs.

18. Congress and the President wanted the IRS to widely broadcast the ERC program to American businesses, so they could claim its benefits.

19. The IRS was instructed to conduct a public information campaign about the ERC program to encourage businesses to participate.

20. The CARES Act was amended to require the IRS to work with the Small Business Administration (SBA) to disseminate information about the tax credit. [5]

**B. The Employee Retention Credit**

---

[4] *See* I.R.C. § 3134(c)(3); FS-2020-05 (May 2020); *see also* U.S. Dep't of the Treasury, *Emp. Retention Tax Credit: What You Need to Know*, (last visited Aug. 19, 2024), https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.

[5] *See* Consolidated Appropriations Act (requiring government "outreach" to business by giving "notice about the credit allowed under this section and the requirements for eligibility to claim the claim"); *see also* U.S. Dep't of the Treasury, *Treasury Encourages Bus. Impacted by COVID-19 to Use Emp. Retention Credit* (Mar. 31, 2020), https://home.treasury.gov/news/press-releases/sm962.

21. The original CARES Act, signed into law in March 2020, provided a tax credit equal to 50 percent of qualified wages paid to employees, up to a maximum of $10,000 per employee of qualified wages for the year 2020.

22. In late 2020, the CARES Act was amended to raise the tax credit and extend its duration. The amendment allowed eligible employers to claim 70 percent of the qualified wages paid with a cap of $10,000 per employee of qualified wages for each calendar quarter.[6] This increased credit was extended to the first and second quarters of 2021, and eventually through the third quarter of 2021.[7]

23. In sum, an eligible employer could claim a 2020 credit up to $5,000 per employee for the year, and, for 2021, the employer could claim a credit up to $7,000 per employee per quarter.

24. Unless otherwise excepted, qualified wages are wages and compensation (subject to Social Security and Medicare taxes) paid by an eligible employer to eligible employees and include the eligible employer's qualified health plan expenses that were properly allocable to such wages.

---

[6] *See* The Relief Act, enacted as the Consolidated Appropriations Act; *see also* I.R.C.3134(b)(1)(A-B), I.R.C. 3134 (b)(2) (citing §3134(a), with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132)).

[7] The Relief Act § 207 enacted as the Consolidated Appropriations Act (modifying the cap to 70%); the American Rescue Plan Act (providing further relief of 70% of a cap of $10,000 for the third and fourth quarters of 2021); Infrastructure Inv. & Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (disallowing the ERC credit for the fourth quarter businesses unless they qualified as a start-up business).

25. The ERC was terminated for most employers in the fourth quarter of 2021 by the Infrastructure Investment and Jobs Act ("Infrastructure Act"). *See* IR-2021-242 (Dec. 6, 2021). Under the Infrastructure Act, only a recovery startup business could claim the ERC in the fourth quarter of 2021. *Id.*

### C. Qualifications to Claim the ERC

26. The ERC was available to businesses of many sizes, but an eligible business generally had to meet one of two criteria for a given quarter in 2020 or 2021: (1) a statutorily defined decline in the business's gross receipts when comparing an applicable quarter in 2020 or 2021 with the same quarter in 2019, or (2) the business was fully or partially suspended due to a governmental order during an applicable quarter in 2020 or 2021.

27. A business qualifies as an "eligible employer" if it suffered a statutorily required reduction in gross receipts in 2020 and 2021, as compared to 2019. See I.R.C. § 3134(c)(2)(A)(ii)(II).

28. A qualifying quarter for 2020 is a quarter where the business's gross receipts were 50 percent less than the same quarter in 2019. *See* CARES Act § 2301(c)(2)(B). Once an eligible business has a qualifying quarter for 2020, each following quarter in 2020 may also be an eligible quarter, ending with the first calendar quarter following a

quarter in which the gross receipts exceed 80 percent of the gross receipts for the same calendar quarter in 2019.[8]

29. A qualifying quarter for 2021 is a quarter when the business's gross receipts were 20 percent less than the same quarter in 2019. *See* I.R.C. § 3134(c)(2)(A). For 2021, employers may elect into ERC qualification for a calendar quarter by demonstrating a gross receipts reduction of more than 20 percent in the immediately preceding quarter. *See* I.R.C. § 3134(c)(2)(A) & (B); *see also* IRS Notice 2021-49.

### D. The IRS's Refusal to Apply the CARES Act and Its Moratorium

30. The IRS has decided not to follow the plain text of the CARES Act.

31. In September 2023, the IRS unilaterally announced it was suspending its review and processing of new ERC claims. *See* IR-2023-169 (Sept. 14, 2023). "During the ERC review period, the IRS continued to process claims received prior to September 2023. The agency processed 28,000 claims worth $2.2 billion and disallowed more than 14,000 claims worth more than $1 billion." *See* IR-2024-169 (June 20, 2024). The IRS originally suggested its moratorium would end, and processing would resume, at the beginning of 2024. The IRS did not end the moratorium in 2024. The IRS partially lifted the

---

[8] IRS Notice 2021-20 (Mar. 1, 2021) ("Section 2301(c)(2)(B)(i) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts begins with the first calendar quarter beginning after December 31, 2019, for which gross receipts (within the meaning of section 448(c) of the Code) for the calendar quarter are less than 50 percent of gross receipts for the same calendar quarter in the prior year. Section 2301(c)(2)(B)(ii) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts ends with the calendar quarter that follows the first calendar quarter beginning after a calendar quarter described in section 2301(c)(2)(B)(i) of the CARES Act for which gross receipts of the employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year.")

8

moratorium for cases filed before January 31, 2024, yet the IRS continues to refuse to adhere to the statute.

32. The IRS has claimed that it continues to process claims filed before the moratorium began on September 14, 2023, but it has done so "at a greatly reduced speed." IR-2023-169 (Sept. 14, 2023). In practice, the IRS has processed very few ERC claims since the moratorium began. The IRS has intentionally stalled the ERC program to such an extent that it has effectively suspended the program altogether.

33. On June 20, 2024, the IRS issued a news release announcing plans to deny tens of thousands of allegedly improper, high-risk Employee Retention Credit claims while beginning to process low-risk claims. *See* IR-2024-169 (June 20, 2024).

### E. Plaintiffs' qualifications for the ERC under the "gross receipts" test of the CARES Act

34. Enterprises and Underlayment each qualify for the ERC under the CARES Act because each company suffered a substantial decline in gross receipts for the second quarter (Q2) of 2021 and third quarter (Q3) of 2021.

35. In 2021, Enterprises employed 54 full-time employees, allowing it to qualify as an eligible business for the ERC that year.

36. In 2019, Underlayment employed 19 full-time employees, also allowing it to qualify as an eligible business for the ERC that year.

37. The gross receipts for Enterprises for Q2 of 2021 were $3,884,510 as compared to $9,567,483 for Q2 of 2019, showing a roughly 60% decline in gross receipts.

38. Underlayment's gross receipts for Q2 of 2021 were $786,381 as compared to $2,561,925 for Q2 of 2019, showing a roughly 69% decline in gross receipts.

39. Under both the CARES Act and the IRS's guidelines, Q2 of 2021 is a qualifying quarter for both Enterprises and Underlayment because the gross receipts for Q2 of 2021 were less than 20% of the gross receipts for Q2 2019.

40. The gross receipts for Enterprises for Q3 of 2021 were $4,908,521 as compared to $9,985,607 for Q3 of 2019, showing a roughly 51% decline in gross receipts.

41. Underlayment's gross receipts for Q3 of 2021 were $1,123,012 as compared to $1,726,949 for Q3 of 2019, showing a roughly 35% decline in gross receipts.

42. Under both the CARES Act and the IRS's guidelines, Q3 of 2021 is a qualifying quarter for both Enterprises and Underlayment because the gross receipts for Q3 of 2021 were less than 20% of the gross receipts for Q3 2019.

## FIRST CLAIM FOR RELIEF

### [Refund for "Gross Receipts Declined" – Enterprises as Plaintiff]

43. Plaintiff, Enterprises, incorporates by reference the allegations in Paragraphs 1 through 42 as if fully set forth herein.

44. Underlayment is an eligible employer under the CARES Act criteria for 2020 and 2021.

45. Under the gross-receipts-declined test, Enterprises is entitled to an ERC tax refund for Q2 and Q3 of 2021 because the gross receipts declined in each quarter, measured against the comparable quarter for 2019, by 60% and 51% respectively.

46. Enterprises paid qualifying wages to 104 part- and full-time employees during 2021.

47. None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness. Enterprises excluded from the eligible wages the qualified wages included in the payroll costs reported on any PPP Loan Forgiveness Application.

48. Enterprises made a timely and proper claim for the ERC with the IRS. Enterprises filed its Form 941-X with the IRS for Q2 of 2021 on April 21, 2023 and resubmitted with corrections on August 22, 2023. It claimed an ERC in the amount of $497,047 for that quarter.

49. Enterprises made a timely and proper claim for the ERC with the IRS. Enterprises filed its Form 941-X with the IRS for Q3 of 2021 on April 21, 2023 and resubmitted with corrections on August 22, 2023. It claimed an ERC in the amount of $579,047.55 for that quarter.

50. The IRS has failed to process the valid ERC claim Enterprises filed, and, as a result, has not provided the statutorily required refund to Enterprises.

51. Under I.R.C. § 6611, the United States owes interest on the refund due to Enterprises "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Enterprises overpaid its taxes and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Enterprises.

52. Under I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. According to I.R.C. § 6532, no suit under I.R.C. § 7422 shall begin before the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.

## SECOND CLAIM FOR RELIEF

**[Refund for "Gross Receipts Declined" – Underlayment as Plaintiff]**

53. Plaintiff, Underlayment, incorporates by reference the allegations in Paragraphs 1 through 42 as if fully set forth herein.

54. Underlayment is an eligible employer under the CARES Act criteria for 2020 and 2021.

55. Under the gross-receipts-declined test, Underlayment is entitled to an ERC tax refund for Q2 and Q3 of 2021 because the gross receipts declined in each quarter, measured against the comparable quarter for 2019, by 69% and 35% respectively.

56. Underlayment paid qualifying wages to 52 part- and full-time employees during 2021.

57. None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness. Underlayment excluded from the eligible wages the qualified wages included in the payroll costs reported on any PPP Loan Forgiveness Application.

58. Underlayment made a timely and proper claim for the ERC with the IRS. Underlayment filed its Form 941-X with the IRS for Q2 of 2021 on April 21, 2023 and resubmitted with corrections on August 22, 2023. It claimed an ERC in the amount of $225,980.12 for that quarter.

59. Underlayment made a timely and proper claim for the ERC with the IRS. Underlayment filed its Form 941-X with the IRS for Q3 of 2021 on April 21, 2023. It claimed an ERC in the amount of $239,322.94 for that quarter.

60. The IRS later issued a partial refund for Q3 of 2021 to Underlayment but improperly applied $28,582.07 to "other taxes."

61. Underlayment did not, and still does not, owe the amount of $28,582.07 for any other taxes.

62. Despite Underlayment's reasonable efforts to resolve the issue, the IRS has not reversed its application of $28,582.07 for other taxes and has provided no back-up data, information, or support for why it reduced the 2021 Q3 ERC refund by this amount.

63. As a result, the amount of $254,562.19 for the ERC (Q2 2021 and partially for Q3 2021) remains due and owing to Underlayment.

64. Other than the partial refund just described, the IRS has failed to process the valid ERC claim Underlayment filed, and, as a result, has not provided the statutorily required refund to Underlayment.

65. Under I.R.C. § 6611, the United States owes interest on the refund due to Underlayment "from the date of the overpayment to a date (to be determined by the

Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Underlayment overpaid its taxes and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Underlayment.

66. Under I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. According to I.R.C. § 6532, no suit under I.R.C. § 7422 shall begin before the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.

### THIRD CLAIM FOR RELIEF

### [Attorneys' Fees and Costs]

67. Plaintiffs incorporate and reallege paragraphs 1 through 62 above.

68. Under I.R.C. § 7430(c)(4)(B), the United States must pay litigation and administrative costs because its position is not "substantially justified." The IRS created a self-imposed moratorium on processing ERC claims, and, as a result, has refused to process straightforward claims like those belonging to each Plaintiff.

### PRAYER FOR RELIEF

Plaintiffs request the following relief and judgment:

    a. *For Enterprises*, a tax refund in the amount of $1,076,094.55 for the Employee Retention Credit for the following taxable periods: the second and third quarters of 2021;

    b. *For Underlayment*, a tax refund in the amount of $254,562.19 for the Employee Retention Credit for the following taxable periods: the second and third quarters of 2021;

    c.    Reasonable attorneys' fees and costs, as allowed by law;

    d.    Pre-judgment and post-judgment interest, as allowed by law; and

    e.    Such further relief as the Court may deem just and proper.

Dated:  October 8, 2024

                                          Respectfully submitted,

                                          MTH ENTERPRISES, LLC
                                          MTH UNDERLAYMENT, LLC

                                          By: */s/ Kenneth J. Vanko*
                                                 One of Their Attorneys

Kenneth J. Vanko (ARDC#6244048)
Clingen Callow & McLean, LLC
2300 Cabot Drive, Ste. 500
Lisle, Illinois 60532
(630) 871-2609
vanko@ccmlawyer.com